IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BLACK WARRIOR RIVERKEEPER, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:11-CV-267-WKW [WO] |
| ALABAMA DEPARTMENT OF TRANSPORTATION, *et al.*, | ) ) ) | |
| Defendants. | ) | |

# **ORDER**

Before the court is the motion to intervene filed by the Coalition for Regional Transportation ("CRT") (Doc. # 91), which has been fully briefed (Docs. # 92, 94, 95, 96, 100). For the reasons that follow, the motion is due to be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jobs and revenue are a problem in the metropolitan area of Birmingham, Alabama – and the problem is not one of excess. CRT (an organization that purports to represent governments and businesses in the area) has studied the problem and advocates a solution: A new interstate connector north of town – the Northern Beltline.

According to CRT, construction and completion of the Northern Beltline would create jobs (in the tens of thousands) and increase tax revenues (in the tens of

millions). The total economic impact of the Northern Beltline, CRT claims, would be billions of dollars. If that is not a solution to the area's problem with jobs and revenue, it seems a step in the right direction.

But litigation threatens the completion of the Northern Beltline. Plaintiff Black Warrior Riverkeeper, Inc., filed this lawsuit in April 2011, asking the court to enjoin construction until Defendants (all agencies and individuals tasked with building the Northern Beltline) took a "hard look" at the project's environmental effects. In addition to the environmental studies undisputedly performed in 1997 and reevaluated in 2006, Riverkeeper argued federal law required yet another reevaluation before construction could proceed.

So Defendants conducted another reevaluation. Approved on March 29, 2012, that reevaluation (the "2012 reevaluation") changed the contours of this case. Although Riverkeeper maintains that Defendants have not adequately considered the Northern Beltline's environmental impact, it now challenges the 2012 reevaluation, not the one conducted in 2006.

From its inception, this lawsuit has pitched Riverkeeper's defense of the local environment against CRT's promotion of the local economy. But only now does CRT try to get involved directly. On December 7, 2012, CRT filed a motion to intervene

as a defendant (Doc. # 91), which is now before the court. Only Riverkeeper opposes the motion. (Doc. # 95.)

## II. DISCUSSION

As the structure of Rule 24 indicates, timeliness is a threshold consideration on a motion to intervene, whether permissively or of right.[1] As Riverkeeper points out, CRT has known of its interest in this lawsuit since April 2011, but it made no attempt to intervene until December 2012, a delay of over a year and a half. CRT provides only a Monday-morning explanation for the delay: Because CRT predicted from the start that the 2012 reevaluation would be approved before this lawsuit was resolved, it saw no need to intervene before that time. Even after the 2012 reevaluation was approved, CRT inexplicably waited eight months before moving to intervene, leaving its interests unprotected. By all appearances, CRT's motion is untimely.

Timeliness is a flexible inquiry, meant to "regulate intervention in the interest of justice." *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002). If CRT's motion were otherwise due to be granted, justice might require the court to overlook tardiness. But as the following discussion will show, CRT's motion would fail even if it were timely filed.

---

[1] *See NAACP v. New York*, 413 U.S. 345, 365 (1973) ("Whether intervention be claimed of right or as permissive, it is at once apparent, from the initial words of both Rule 24(a) and Rule 24(b), that the application must be 'timely.' If it is untimely, intervention must be denied."); Fed. R. Civ. P. 24(a), 24(b)(1) (court allows intervention "[o]n timely motion").

## A. CRT lacks a sufficient interest in the subject matter of this litigation to intervene of right.

CRT is not entitled to intervene of right without establishing that (1) its application is timely, (2) it has an interest relating to the subject matter of this action, (3) disposition of this action might practically impede or impair its ability to protect that interest, and (4) its interest is represented inadequately by the existing parties to the suit. *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302–03 (11th Cir. 2008). Because CRT fails to establish the second prerequisite, the inquiry starts and ends there.[2]

CRT cannot intervene of right without first identifying a direct, substantial, and legally protectable interest in the subject matter of this suit. *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.,* 425 F.3d 1308, 1311 (11th Cir. 2005). To that end, CRT argues it has "substantial interests in realizing the enormous economic and social benefits that will result from the construction and completion of the Northern Beltline." (Doc. # 92, at 12.) Those interests range from increased tax revenues to decreased travel time. CRT also claims an interest in the federal funding allocated for

---

[2] Compliance with all four factors is suspect, however. As discussed above, timeliness is questionable. Further, because CRT lacks a protectable interest, this action cannot impair CRT's ability to protect one. Finally, there is no evidence to suggest the existing Defendants lack resources or ability to carry the fight, so CRT cannot rebut the presumption of adequate representation that arises when an existing party seeks the same objective as a proposed intervenor. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1311 (11th Cir. 2004).

the project, though it does not suggest any of its stakeholders will receive any of those funds directly.

But those interests do not weigh in favor of intervention unless they are legally protectable. In the Eleventh Circuit, "a legally protectable interest is something more than an economic interest." *Mt. Hawley*, 425 F.3d at 1311 (quotations omitted). Instead, an applicant must identify an interest in the subject matter of the litigation that "the substantive law recognizes as belonging to or being owned by the applicant." *Id.* (quotations omitted).

None of the interests CRT asserts meets that standard. The closest CRT comes is its interest in the federal funds allocated for the Northern Beltline, but even there CRT points to no substantive law suggesting it "own[s]" that funding, or that any of the project's anticipated benefits "belong[ ] to" CRT. *Id.* Undoubtedly, CRT has good reasons to support the Northern Beltline. But it lacks a legally protectable interest in the subject matter of this action. Accordingly, CRT is not entitled to intervene of right.

**B.      Permissive intervention is not warranted.**

Permissive intervention may be allowed on timely motion if an applicant has a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). The court has the discretion to deny permissive

intervention even if both of those requirements are met.  *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

In its motion, CRT dutifully recites that it "shares certain defenses set forth by Defendants in their answers to the Second Amended Complaint."  (Doc. # 92, at 17.)  That is an understatement – *all* of the defenses CRT lists in its proposed answer are already asserted by an existing Defendant.  CRT also seeks to achieve the same goal as the existing Defendants: to "demonstrate that Defendants complied with [the National Environmental Policy Act]."  (Doc. # 92, at 17.)  And although CRT argues it stands in a unique position to help settle factual disputes that might arise concerning some aspects of the administrative record, it makes no effort to explain how it is better suited for that task than the existing Defendants.  In short, it appears CRT's involvement in this action would be redundant.

Such redundancy would needlessly expand this litigation.  As the Eleventh Circuit has recognized, "the introduction of additional parties inevitably delays proceedings."  *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1367 (11th Cir. 1982).  Further, CRT's involvement would introduce collateral issues that would only serve to complicate matters.  (For instance, it is unclear whether CRT

actually represents the governments and businesses it claims as "stakeholders.") Because CRT's involvement as a party would unduly delay the resolution of this case, its motion to intervene is due to be denied.

## C. Amicus Curiae

Although CRT is not entitled to intervene as a party, this case presents an "classic amicus curiae situation." *Piedmont Heights Civic Club, Inc. v. Moreland*, 83 F.R.D. 153, 159 (D.C. Ga. 1979) (perceiving a "classic amicus curiae situation" when potential intervenors "ha[d] a genuine concern over the outcome of the litigation, yet they st[ood] at such a distance to it that their participation as intervenors might [have] significantly complicate[d] the proceedings"). Riverkeeper recognizes as much in its brief: "CRT could . . . file an amicus curiae brief should there be some specific legal argument that it wishes to make." (Doc. # 95, at 14.) Accordingly, CRT may move for leave to participate as an amicus curiae if it wishes to participate in any stage of this litigation.

## III. CONCLUSION

It is therefore ORDERED that CRT's motion to intervene (Doc. # 91) is DENIED.

DONE this 25th day of March, 2013.

      /s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE